UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIELLA FRANCESCA GRECO D.O., et al.,<br><br>                      Plaintiffs,<br><br>v.<br><br>MATTHEW TODD AHERN D.O., et al.,<br><br>                      Defendants. | Case No.:  21cv155-RBM(MSB)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PLAINTIFF'S GABRIELA FRANCESCA GRECO'S MOTION TO VACATE ORDER GRANTING JOINT MOTION TO DISMISS WITH PREJUDICE AND TO WITHDRAW NOTICE AND STIPULATION OF THE PARTIES TO DISMISS ENTIRE CASE WITH PREJUDICE [ECF NO. 66]** |

     Pending before the Court is Plaintiff's Gabriela Francesca Greco's[1] "Motion to Vacate Order Granting Joint Motion to Dismiss With Prejudice and to Withdraw Notice and Stipulation of the Parties to Dismiss Entire Case With Prejudice" ("Motion to

---

[1]  The Court notes that Plaintiff Greco filed the Motion to Vacate, and Plaintiff LaRue did not move to vacate the dismissal order.  (See ECF No. 66; see also ECF No. 72.)  Accordingly, any further reference to "Plaintiff" in this Report and Recommendation is to Plaintiff Greco.

1

1   Vacate") [ECF No. 66], Defendants' Oppositions [ECF Nos. 69, 70, 71], Plaintiff's Reply in

2   support of her Motion to Vacate [ECF No. 72], and Defendants' Objections to new

3   evidence in Plaintiff's Reply [ECF Nos. 73, 74, 75].  This Report and Recommendation is

4   submitted to the United States District Judge Ruth Bermudez Montenegro pursuant to

5   28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the

6   Southern District of California.  For the foregoing reasons, the Court **RECOMMENDS** that

7   Plaintiff's Motion to Vacate be **DENIED**.

8                           **I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

9           On January 27, 2021, Plaintiff Gabriella Greco and her husband Kenneth LaRue,

10  filed a "Complaint for Damages," and on June 1, 2021—a "First Amended Complaint for

11  Damages" ("FAC").  (ECF Nos. 1, 34).  In the FAC, Plaintiffs alleged that on January 29,

12  2020, Greco was evaluated at Scripps Encinitas Emergency Department for mild acute

13  pancreatitis.  (ECF No. 34 at 6.)  She was admitted and treated at the hospital for

14  thirteen days.  (Id. at 6–15.)  Plaintiffs alleged, inter alia, that Defendants (doctors,

15  nurses, and medical care providers) failed to treat Greco's pancreatitis, which increased

16  the risk of serious or life-threatening complications and long-term pancreatic problems.

17  (Id. at 15–16.)  Plaintiffs further alleged that Defendants administered unnecessary

18  medical treatments, failed to treat Greco's hypersensitivity reaction to a certain drug

19  which led to an airway obstruction and contributed to respiratory distress, and failed to

20  recognize and address her hypervolemia and consider fluid overload as a cause of her

21  respiratory distress.  (Id.)  According to the FAC, Plaintiff Greco "suffered multiple

22  hypoxic episodes resulting in hypoxic encephalopathy, skin wounds, emotional distress,

23  and other injuries."  (Id. at 16.)  The FAC asserted the following causes of action:

24  (1) professional negligence (Greco against all Defendants); (2) medical battery (Greco

25  against all Defendants, except Defendants Ahern, Mason, and Encinitas Emergency

26  Medicine, Inc.); (3) false imprisonment (Greco against Defendants Himaya, Rozar, Cho,

27  Scripps Health, and Does 1–3); (4) loss of consortium (LaRue against all Defendants); and

28

1  (5) bystander emotional distress (LaRue against all Defendants, except Defendants

2  Ahorn, Mason, and Encinitas Emergency Medicine, Inc.).  (Id. at 15–20.)

3        On August 18, 2021, a "Notice and Stipulation of the Parties to Dismiss the Entire

4  Case with Prejudice" was filed on the docket.  (ECF No. 61.)  On August 19, 2021, District

5  Judge Curiel granted the motion and dismissed the case with prejudice.  (ECF No. 62.)

6        On September 3, 2021, Greco filed an ex parte motion for substitution of attorney

7  seeking to be substituted in for attorney Hart, and the District Judge granted the motion

8  on September 7, 2021.  (ECF Nos. 63, 64.)  Two weeks later, Greco filed the instant

9  Motion to Vacate the District Judge's order dismissing this action with prejudice

10  pursuant to Federal Rule of Civil Procedure 60(b)(1) and 60(b)(6).  (ECF No. 66.)

11  Defendants filed Oppositions, (ECF Nos. 69, 70, 71), and Greco filed a Reply in support of

12  her Motion to Vacate, (ECF No. 72).  On November 12, 2021, Greco filed a "Motion to

13  Strike Scripps Defendants' Objection to New Evidence Submitted by Plaintiff in Support

14  of her Reply, or in the Alternative, Plaintiff's Response to the Scripps Defendants'

15  Objection to New Evidence Submitted by Plaintiff in Support of her Reply."  (ECF No. 77;

16  see also ECF No. 76.)

17        On November 16, 2021, District Judge Curiel issued an "Order re Motion to Vacate

18  Order Granting Joint Motion to Dismiss with Prejudice."  (ECF No. 78.)  The Order stated

19  the following:

20       [B]ased on the record presented, there are disputed facts as well as an
     absence of facts concerning Mr. Hoyt [Hart]'s role and actions during this

21       case.  In the objection, Defendants seek an order that Plaintiff has waived

22       the attorney-client privilege and the opportunity to conduct discovery
     regarding Plaintiff's communications with her former counsel.  (Dkt. No.

23       73.)  The Court agrees that additional discovery is necessary to provide a

24       fuller understanding of what transpired.  Thus, the Court REFERS this
     matter to the Magistrate Judge for a report and recommendation on

25       whether Plaintiff's motion to vacate should be granted.  The Magistrate

26       Judge shall address any attorney-client privilege issues, any discovery
     necessary to resolve this question, and conduct an evidentiary hearing, if

27       necessary.

28

1  (Id. at 8.)  District Judge Curiel denied Plaintiff's motion to strike Defendants' objection.

2  (Id. n.4.)

3      On February 4, 2022, this Court conducted an evidentiary hearing.  (See ECF No.

4  84; see also ECF No. 85.)  On April 12, 2022, the action was transferred from the

5  calendar of District Judge Curiel to the calendar of District Judge Montenegro.  (ECF No.

6  86.)

7                          **II.  APPLICABLE LAW**

8      Under Federal Rule of Civil Procedure 60(b)(1), a court "may relieve a party . . .

9  from a final judgment, order, or proceeding" for "mistake, inadvertence, surprise, or

10  excusable neglect."  Id.  For purposes of Federal Rule of Civil Procedure 60(b)(1),

11  "parties should be bound by and accountable for the deliberate actions of themselves

12  and their chosen counsel."  Latshaw v. Trainer Wortham & Co., Inc., 452 F.3d 1097, 1101

13  (9th Cir. 2006).  This includes not only innocent attorney mistakes, but also intentional

14  attorney misconduct.  Id.

15      Federal Rule of Civil Procedure 60(b)(6) further provides that a court "may relieve

16  a party . . . from a final judgment, order, or proceeding" for "any other reason that

17  justifies relief."  Id.; see also Lehman v. U.S., 154 F.3d 1010, 1017 (9th Cir. 1998) ("Rule

18  60(b)(6) is a catch-all provision that allows a court to vacate a judgment for 'any other

19  reason justifying relief from the operation of the judgment.'").  Federal Rule of Civil

20  Procedure 60(b)(6) is "used sparingly as an equitable remedy to prevent manifest

21  injustice" and "is to be utilized only where extraordinary circumstances prevented a

22  party from taking timely action to prevent or correct an erroneous judgment."  Latshaw,

23  452 F.3d at 1103.  The movant is required to "demonstrate both injury and

24  circumstances beyond his control that prevented him from proceeding with . . . the

25  action in a proper fashion."  Id. (quoting Cmty. Dental Servs. v. Tani, 282 F.3d 1164, 1168

26  (9th Cir. 2002)).

27  ///

28  ///

### III.  ANALYSIS

Greco moves to vacate the "Order Granting Joint Motion to Dismiss With Prejudice" [ECF No. 62], arguing that she did not settle this action with any of the Defendants, did not sign a settlement agreement, and did not consent to the filing of the dismissal with prejudice.  (ECF No. 66 at 2; see also ECF No. 66-1 at 5–7.)  Greco further claims that she sought to proceed pro se, was not aware that her former counsel Hart agreed to dismiss the case with prejudice, and had not reviewed or signed the stipulation to dismiss before it was filed.  (ECF No. 66-1 at 6.)  Greco also asserts that in light of the dismissal of the action, she is precluded from litigating her claims, which amounts to "manifest injustice."  (Id. at 7.)  Greco argues that the facts and circumstances in this case are so "extraordinary," "unusual and extreme," that they warrant setting aside the entry of the dismissal with prejudice pursuant to Federal Rule of Civil Procedure 60(b)(1), (6).  (Id. at 4–8.)

Defendants argue that Greco is suffering from "buyer's remorse" and mischaracterizes the circumstances surrounding the parties' agreement to settle.  (ECF No. 69 at 4; see also ECF Nos. 69, 70, 71.)  Defendants maintain that in lieu of providing the signed authorizations for release of her medical records on August 17, 2021, Greco "voluntarily and unequivocally agreed to dismiss her case against all defendants in exchange for waiver of costs."  (ECF No. 69 at 14.)  Defendants further contend that Greco took affirmative steps after the dismissal of the action to ensure that Defendants were abiding by the terms of the parties' settlement agreement.  (Id. at 4.)  Defendants also assert that Greco is bound by her former counsel's actions, and any alleged attorney malpractice does not warrant setting aside a judgement pursuant to Federal Rule of Civil Procedure 60(b).  (Id.)  Defendants therefore ask the Court to deny Greco's Motion to Vacate.  (Id. at 16.)

Greco replies that she did not consent to the dismissal of the case with prejudice, and her former counsel Hart did not have authority to settle the case because she had terminated him before he negotiated the alleged settlement.  (ECF No. 72 at 6–9.)

1    Greco maintains that she first learned about the alleged settlement after the case was

2    dismissed with prejudice on August 19, 2021, and immediately contacted defense

3    counsel to "determine what happened," as well as to find out "what private and

4    personal records of hers were circulating between defendants and their attorneys," and

5    to stop "the transmission of privileged materials." (Id. at 20.)  Greco argues that the

6    circumstances in this case "are so unusual and compelling that they warrant the

7    extraordinary relief" she seeks.  (Id. at 5.)

8         In their Objection to the New Evidence in Greco's Reply ("Objection to New

9    Evidence"), Defendants move to exclude certain evidence, claiming that Greco

10    improperly submitted the evidence for the first time in her Reply, and the evidence is

11    hearsay and irrelevant.  (ECF No. 73 at 2–6.)  Specifically, Defendants ask the Court to

12    disregard: (1) paragraphs 3–6 of the Greco Declaration II; (2) Exhibits A and D to the

13    Greco Declaration II; and (3) portions of Exhibit C containing Greco's August 20, 2021 e-

14    mail to Kevin Rappel and his August 23, 2021 e-mail response.  (Id. at 6 (citing ECF No.

15    72-1, Decl. of Gabriella Greco ("Greco Decl. II"); id., Exhs. A, C, D).)  Alternatively,

16    Defendants seek an order finding that Greco waived the attorney-client privilege, and

17    allowing them to inquire into Greco's communications with her former counsel Hart, as

18    well as statements in Dr. Spadoni's declaration.  (Id. at 6–7.)  In support, Defendants

19    argue that by submitting to the Court her "purported attorney-client communications,

20    Ms. Greco has waived the attorney-client privilege," and Defendants should therefore

21    be allowed to "inquire into the totality of those communications."  (Id. at 2.)

22         Greco responds that she did not submit any "new" evidence in her Reply, and the

23    evidence at issue directly responds to the allegations in Defendants' Opposition.  (ECF

24    No. 77 at 3–6.)  Greco also contends that her August 12, 2021 text message to Hart

25    terminating him did not seek legal advice, and Defendants' argument that she waived

26    the attorney-client privilege thus lacks merit.  (Id. at 5.)  She further argues that the

27    evidence at issue is not hearsay and is relevant.  (Id. at 6–8.)  Greco therefore asks the

28    Court to grant her Motion to Vacate.  (Id. at 8–9.)

### A. Procedural Issues

The Court initially addresses Defendants' request to disregard (1) paragraphs 3–6 of the Greco Declaration II; (2) Exhibits A and D to the Greco Declaration II; and (3) portions of Exhibit C, containing Greco's August 20, 2021 e-mail to Kevin Rappel and his August 23, 2021 e-mail response.  (ECF No. 73 at 6.)  During the evidentiary hearing, the Court found that the affidavit from Dr. Spadoni (attached as Exhibit D to the Greco Declaration II) was "immaterial and irrelevant" to the issues raised in the Motion to Vacate, and would "not be considered for any purpose."  (ECF No. 85 at 13–14.) Further, because the Court does not rely in this Report or Recommendation on the portions of Exhibit C that contain Greco's August 20, 2021 e-mail to Kevin Rappel and his response, (Greco Decl. II, Exh. C at 9), and paragraph 3 in the Greco Declaration II, Defendants' motion to exclude that evidence is moot.  See Garcia Lopez v. Barr, 822 F. App'x 648, 649 (9th Cir. 2020) ("[B]ecause we do not consider the additional evidence submitted with [the petitioner's] reply brief, the [respondent's] motion to strike . . . is denied as moot).

The remaining evidence Defendants ask the Court to disregard (paragraphs 4–5 in the Greco Declaration II and Exhibit A to the Greco Declaration II) concerns Greco's August 12, 2021 text message to her former counsel Hart, and Hart's response to the text message, and Greco's message left with defense counsel's Low's office the following day.  (See Greco Decl. II at 2; id., Exh. A.)  The Court finds that the evidence is highly relevant to whether Hart had authority to negotiate a settlement in this action and agree to dismiss the action with prejudice.  Further, Defendants were allowed to file their Objection to New Evidence and to argue their position concerning Plaintiff's evidence at issue.  (See ECF No. 73; see also ECF No. 78 at 8 n.4 (District Judge's order denying Plaintiff's motion to strike Defendants' Objection to New Evidence).) Additionally, as discussed below, the Court granted the alternative relief requested by Defendants in their Objection to New Evidence, (ECF No. 73 at 2, 6–7), by finding that Greco waived the attorney-client privilege and allowing Defendants to inquire into

1    Greco's communications with her former counsel Hart during the evidentiary hearing.

2    Accordingly, the Court will consider the evidence presented in paragraphs 4 and 5 of the

3    Greco Declaration II, and Exhibit A to the Greco Declaration II.  See Sinclair v. City of

4    Needles, 365 F. App'x 844, 845 n.1 (9th Cir. 2010) (finding that "[t]he district court

5    properly considered evidence submitted alongside the City's reply brief, as it did not

6    deny Appellants an opportunity to respond."); Champion-Cain v. MacDonald, No. 14-cv-

7    2540-GPC-BLM, 2015 WL 3775659, at *2 (S.D. Cal. June 17, 2015) (admitting new pieces

8    of evidence, where defendants had the opportunity to review the evidence, present

9    arguments in their opposition briefs, and address the evidence at the hearing on the

10   pending motion).

11       **B.  Attorney-Client Privilege**

12       "[I]n a civil case, state law governs privilege regarding a claim or defense for

13   which state law supplies the rule of decision."  Fed. R. Evid. 501.  In diversity actions,

14   such as this action, questions of privilege are controlled by state law.  In re Cal. Pub.

15   Utils. Comm'n v. Westinghouse Elec. Corp., 892 F.2d 778, 781 (9th Cir. 1989).  Under

16   California law, evidentiary privileges, including the attorney-client privilege, are

17   governed by statute.  HLC Props., Ltd. v. Sup. Ct., 105 P.3d 560, 563 (2005); see also Cal.

18   Evid. Code § 911(b) ("Except as otherwise provided by statute . . . [n]o person has a

19   privilege to refuse to disclose any matter or to refuse to produce any writing, object, or

20   other thing.").

21       The attorney-client privilege confers a privilege on the client "to refuse to

22   disclose, and to prevent another from disclosing, a confidential communication between

23   client and lawyer."  Cal. Evid. Code § 954.  The party claiming the privilege has the initial

24   burden of establishing the facts necessary to support nondisclosure, namely, a

25   confidential communication made in the course of an attorney-client relationship.

26   Costco Wholesale Corp. v. Sup. Ct., 219 P.3d 736, 741 (2009); City of Petaluma v. Sup.

27   Ct., 204 Cal. Rptr. 3d 196, 203 (Ct. App. 2016).  Once that party establishes a prima facie

28

1   claim of privilege, the party seeking disclosure has the burden of proving that the

2   privilege does not apply.  Id.

3       The California Legislature has codified certain exceptions to the attorney-client

4   privilege.  See Cal. Evid. Code §§ 956–962.  "[T]here is no privilege . . . as to a

5   communication relevant to an issue of breach, by the lawyer or by the client, of a duty

6   arising out of the lawyer-client relationship."  Id. § 958.  "[A]n attorney is released from

7   th[e] obligations of secrecy . . . whenever the disclosure of a communication, otherwise

8   privileged, becomes necessary to the protection of the attorney's own rights," such as

9   when the attorney's "integrity, good faith, authority or performance of his duties is

10  questioned."  Carlson, Collins, Gordon & Bold v. Banducci, 64 Cal. Rptr. 915, 923 (Ct.

11  App. 1967).

12      The attorney-client privilege may be "waived with respect to a communication

13  protected by the privilege if any holder of the privilege, without coercion, has disclosed

14  a significant part of the communication or has consented to disclosure made by

15  anyone."  Cal. Evid. Code § 912(a).  "What constitutes a significant part of the

16  communication is a matter of judicial interpretation; however, the scope of the waiver

17  should be determined primarily by reference to the purpose of the privilege."

18  Transamerica Title Ins. Co. v. Sup. Ct., 233 Cal. Rptr. 825, 828 (Ct. App. 1987).

19      Further, although the attorney-client privilege and its exceptions are defined by

20  statute rather than common law, California courts have held that a client may impliedly

21  waive the attorney-client privilege by placing an ordinarily privileged matter at issue,

22  and disclosure is essential for a fair adjudication of the action.  See id.; S. Cal. Gas Co. v.

23  Pub. Utils. Comm'n, 784 P.2d 1373, 1378 (Cal. 1990) (quoting Chicago Title Ins. Co. v.

24  Sup. Ct., 220 Cal. Rptr. 507, 512 n.8 (Ct. App. 1985)) ("The [California] Evidence Code

25  does not create any exception to the lawyer-client privilege for the situation in which a

26  client tenders an issue such as his lawyer's conduct or state of mind.  But the Code does

27  not bar the courts from creating by decisional law new exceptions to various

28  privileges."); see also Liberty Mut. Ins. Co. v. Cal. Auto. Assigned Risk Plan, No. 3:11–CV–

1   01419–MMC (JSC), 2012 WL 892188, at *3 (N.D. Cal. Mar. 14, 2012) (citations omitted)

2   ("Although not specifically reflected in the California statutory law, the theory of *implied*

3   privilege waiver is well-accepted.").

4          The communications between Greco and her former counsel Hart made during

5   the course of the lawyer-client relationship are presumed to be privileged.  See Cal.

6   Evid. Code § 917(a) ("[I]f a privilege is claimed on the ground that the matter sought to

7   be disclosed is a communication made in confidence in the course of the lawyer-

8   client . . . relationship, the communication is presumed to have been made in

9   confidence").  As noted above, Greco argues that her August 12, 2021 text message to

10  Hart terminating him did not seek legal advice, and the communication was therefore

11  not privileged.  (See ECF No. 77 at 5.)  Greco filed with the Court screenshots of her

12  August 12, 2021 text message to her former counsel Hart, and Hart's text message

13  response.  (See Greco Decl. II, Exh. A.)  Even if the entire text messages, or their

14  portions, were covered by the attorney-client privilege, Greco expressly waived the

15  privilege with respect to those communications by filing the screenshots of the text

16  messages on the docket and discussing the contents of the messages in her pleadings.

17  See Cal. Evid. Code § 912(a).  Additionally, because Greco asserts that she terminated

18  attorney Hart on August 12, 2021, and he did not have authority to settle on her behalf

19  and dismiss the action with prejudice, any communications regarding Hart's authority,

20  or lack thereof, to settle and dismiss the action are not privileged.  See Cal. Evid. Code

21  § 958 ("[T]here is no privilege . . . as to a communication relevant to an issue of breach,

22  by the lawyer or by the client, of a duty arising out of the lawyer-client relationship.").

23         Finally, because Greco is claiming that she did not agree to the settlement or to

24  the stipulation to dismiss the action with prejudice, and she was not aware that

25  attorney Hart had agreed to settle the case with prejudice before the dismissal of this

26  action, Greco placed at issue her communications with Hart regarding a potential

27  settlement or dismissal of the action.  Therefore, Greco has impliedly waived the

28  attorney-client privilege as to such communications.  See S. Cal. Gas Co., 784 P.2d at

1378; see also AT&T Mobility LLC v. Yeager, No. 2:13–cv–0007–KJM–DAD, 2015 WL
589525, at *3 (E.D. Cal. Feb. 11, 2015) (applying California law and holding that "by
asserting [his attorney's] lack of authority, [defendant] has impliedly waived his
privilege," where the defendant claimed that his counsel had entered into a settlement
agreement without authorization). [2]

**C. Evidence Presented to the Court in Declarations Before the Evidentiary Hearing**

Due to the medical nature of the claims in this action, on April 16, 2021,
Defendants requested Plaintiff Greco sign authorizations for the release of her medical
records. (ECF No. 69-1, Decl. of William M. Low ("Low Decl.") at 2; id., Exh. B.) Four
months later on August 4, 2021, Greco's counsel e-mailed Defendants a proposed
Stipulated Protective Order "[i]n preparation for providing signed document release
authorizations," which contained the "Attorney's-Eyes-Only" designation. (Low Decl. at
2; id., Exh. C.) Defendants objected to the designation, (Low Decl. at 2), and the Court
scheduled a Discovery Conference to address the issue for August 16, 2021, (ECF No.
57).

On August 12, 2021, Greco sent Plaintiffs' attorney of record, Hoyt Hart, a text
message stating the following:

> Atty Hart
>
> I want you to stop communicating with Scripps or anyone else on this case
> about me. Period. I do not want you to do another thing except notify
> them that you are no longer on the case (unless you want me to notify
> them)
>
> If you need me to communicate this to you in an email, please let me know
>
> You are done with this case

---

[2] Having made the findings regarding the application of the attorney-client privilege, the Court
conducted the evidentiary hearing, described in detail below. (See ECF No. 85.)

1  (Greco Decl. II at 2; id., Exh. A.)  Hart replied on the same day that he would have a

2  substitution of attorney prepared "tomorrow" so that Greco could "represent [her]self."

3  (Id., Exh. A.)

4          Attorney Hart appeared on Plaintiffs' behalf at the August 16, 2021 Discovery

5  Conference regarding a dispute related to the parties' proposed Stipulated Protective

6  Order.  (ECF No. 58; see also Low Decl. at 2.)  Following the hearing, the Court directed

7  the parties to drop the "Attorneys-Eyes-Only" designation and jointly file a Stipulated

8  Protective Order.  (Low Decl. at 2; id., Exh. D.)

9          On August 16, 2021, the parties filed a "Joint Motion for Entry of Stipulated

10  Protective Order."  (ECF No. 59.)  Attorney Hart signed the motion on behalf of Plaintiffs

11  Greco and LaRue.  (Id. at 2.)  On August 17, 2021, the Court granted the joint motion

12  with modification, entered the parties' modified Stipulated Protective Order, and

13  ordered Plaintiffs to execute and deliver the previously served confidential record

14  authorizations to respective Defendants by the end of business day on August 17, 2021.

15  (ECF No. 60 at 2.)

16          The next day, on August 17, 2021, defense counsel Low received a phone call

17  from attorney Hart advising him that Plaintiffs were prepared to voluntarily dismiss the

18  case with prejudice against Scripps Defendants, if Low agreed not to provide copies of

19  Greco's medical records that he had already obtained to counsel for co-Defendants.

20  (Low Decl. at 2–3.)  Low rejected the proposal due to a prior agreement among defense

21  counsel to coordinate gathering and sharing relevant records to avoid duplication of

22  efforts.  (Id. at 3.)

23          Hart called Low again on the same day and advised that "in lieu of providing the

24  Court-ordered authorizations by day's end, the plaintiffs would agree to dismiss the

25  entire action, with prejudice, against all defendants in exchange for a waiver of costs."

26  (Id.)  Low accepted the proposal on behalf of Scripps Defendants.  (Id.)  The same day,

27  Low e-mailed Hart, and all defense counsel confirming full and final resolution of the

28  action.  (Id.; see also id., Exh. E.)  The e-mail stated the following, in relevant part:

> I have now spoken with each of you and understand we have now reached a full and final settlement of the entire case.
>
> Plaintiffs have agreed to dismiss this case with prejudice in exchange for a waiver of costs by all defendants.
>
> In light of this settlement, I recommend we agree to (1) freeze any and all outstanding discovery requests, (2) relieve [attorney Hart] of his obligation to provide us with the signed authorizations for release of records due today and also (3) agree to destroy any records we have obtained on Dr. Greco or her husband.

(Id., Exh. E.)

On August 18, 2021, a "Notice and Stipulation of the Parties to Dismiss the Entire Case with Prejudice" was filed on the docket stating that: "IT IS HEREBY STIPULATED by and between the parties to this action through their designated counsel that the above-captioned action be and hereby is dismissed with prejudice pursuant to FRCP 41(a)(1)." (ECF No. 61 at 2.) The document contained electronic signatures of attorney Hart on behalf of Plaintiffs Greco and LaRue, and attorneys Popke, Hardisty and Low on behalf of Defendants they represented. (Id. at 2–3.) On August 19, 2021, District Judge Curiel granted the joint motion and dismissed this action with prejudice. (ECF No. 62.)

On August 19, 2021, Greco e-mailed Low stating that she was not represented by counsel and requesting to speak "regarding the dismissal of the case." (Low Decl. at 3; id., Exh. F.) Low responded on August 20, 2021, that "[u]nder the circumstances, I really do not wish to speak with you directly," and advising Greco that he had "notified . . . copy service to suspend all efforts to serve subpoenas or otherwise obtain copies of [Greco's] records (from any and all sources)." (Low Decl. at 3; id., Exh. G.)

Greco replied on August 20, 2021, expressing concern about subpoenas for medical records that had already been served. (Low Decl. at 3; id., Exh. H.) She stated the following:

> There needs to be an affirmative effort by your copy service to notify each and every recipient of a served subpoena to instruct them to not respond.

> The lawsuit has ended and your firm has no authority to continue to obtain my or my husband's personal information.  Failure to immediately quash and recall all outstanding subpoenas in light of the dismissal of the lawsuit is abuse of your subpoena powers.
>
> I would also appreciate a comprehensive list of the entities that received subpoenas from your law firm and whether the entity responded with records or if not, the deadline for the response.  For the entities that responded, please send sworn certification that the records you received have been completely deleted from your server and from your copy service's servers.

(Id., Exh. H.)  Low responded on August 20, 2021, that Defendants' copy service had been notified of the dismissal and advised to immediately suspend efforts to gather records responsive to the subpoenas.  (Greco Decl. II at 3; id., Exh. C at 9–10.)  Low further stated that he had asked the copy service to advise all of the providers on whom subpoenas had been served and were outstanding to suspend efforts to gather and produce Greco's records.  (Id.)  Low also stated that all of the records his client had received regarding Greco and her husband would be deleted from the servers.  (Id.)

On August 23, 2021, Greco e-mailed Low claiming that she had contacted three entities that received subpoenas and none of them were aware that the subpoenas had been recalled.  (Low Decl. at 3; id., Exh. I.)  She also stated that:

> I am sure there are more entities who have responded since the dismissal of the case.  This is a blatant abuse of your subpoena powers despite your assurances last Friday.
>
> I demand a list of ALL subpoenas that were sent out and proof that you have affirmatively acted to recall each and every subpoena.  I am drafting correspondence to bring this to the attention of the federal judge.  I will be including the responses from the entities stating that they have not been contacted.

(Id.)  Greco further claimed that she was "bullied" into dismissing the case, and reiterated that she was not represented by counsel.  (Id.)  Low responded the same day by providing the assurances he had provided in his previous e-mail.  (Low Decl. at 3; id.,

21cv155-RBM(MSB)

Exh. J.)  He added that even if some of the providers made copies available to his copy service, the copy service "would not copy the records because the case is over."  (Id.)

On August 25, 2021, Low received a voicemail from Plaintiff LaRue's former employer and a recipient of a subpoena, Mr. Brown of the Lake County State's Attorney's Office.  (Low Decl. at 3; id., Exh. K.)  Brown stated that LaRue had informed him that "the lawsuit was settled," and Brown wanted to confirm that the material in the subpoena was no longer needed.  (Id.)  Low returned the call and advised Brown that the case had been dismissed, and the subpoena issued for LaRue's employment records was void and did not require any response.  (Low Decl. at 3.)

The next day, on August 26, 2021, Greco e-mailed Low stating that "Hart said that an agreement existed for the cost waiver," and asking to send her "a copy of the agreement you entered into with Attorney Hoyt Hart regarding the cost waiver."  (Low Decl. at 3; id., Exh. L.)  Greco further stated the following:

> I did not "agree" to this dismissal with prejudice.  I was not aware of what the parties were stipulating.  There were errors made in this exchange.  In fact, I had communicated to Attorney Hart on Thursday, August 12, 2021 to "stop communicating with Scripps or anyone else on this case about me. Period . . .  You are done with this case."  He promised that he would substitute me in the next day.  Then I was told I was going to have to wait for the substitution until "next week."

(Id.)  Low responded the same day stating:

> On behalf of my clients I agreed to waive costs in exchange for a dismissal with prejudice.  I communicated my position to Mr. Hart and he said he has authority from his clients to agree.  I understood similar agreements were reached with the co-defendants.  This all happened on the day you were ordered by the court to sign and provide the authorizations for release of records.  In light of plaintiffs agreement to dismiss the entire case with prejudice, we informed Mr. Hart that you did not have to provide the signed authorizations because the case was over and done.  Hence, we did not insist that you provide the court ordered signed authorizations.  The dismissal request was drafted that day and submitted to the court followed by the order which Mr. Hart prepared and submitted the next day.

1    (Low Decl. at 4; id., Exh. M.)

2         In her e-mail to Low dated August 27, 2021, Greco stated that she did not review,

3    sign, or agree to the stipulation dismissing the case with prejudice.  (Low Decl. at 4; id.,

4    Exh. N.)  She further stated that her former counsel Hart was "discharged from the case

5    'effective immediately' on August 12th," and she attempted to notify defense counsel

6    that she was no longer represented by counsel and was taking over the case, but was

7    advised not to speak with defense counsel until the substitution paperwork was

8    completed.  (Id.)  She also stated that she was pressured to sign authorizations for her

9    medical records and wanted to substitute in "so that [she] could be informed as to

10   exactly what was being ordered and raise any objections if needed."  (Id.)  Finally, Greco

11   stated that "[a]greeing to the dismissal of [her] case with prejudice is not something

12   [she] would have done voluntarily," and she "expected to be able to review and sign any

13   final stipulation agreement but that did not happen."  (Id.)

14        In her declaration submitted to the Court in support of her Motion to Vacate,

15   Greco states that on August 13, 2021, she called the law office of defense counsel Low,

16   and left a message with the secretary stating that she was representing herself;

17   however, no one followed up regarding her message.  (Greco Decl. II at 2–3.)  She also

18   states that she "did not consent to the Stipulation [of dismissal with prejudice] as

19   entered," and "did not have an opportunity to review, consider or approve the

20   Stipulation prior to entry" of the order dismissing the case with prejudice.  (ECF No. 66-

21   2, Decl. of Gabriella Greco ("Greco Decl. I") at 2.)  Greco declares that she "did not settle

22   with the defendants, did not sign a settlement agreement with the defendants, and did

23   not agree to dismiss the case against defendants with prejudice."  (Id.)  Greco further

24   states that she "was never made aware of an agreement, reviewed any agreement,

25   approved any agreement or authorized any agreement to dismiss [her] case with

26   prejudice."  (Greco Decl. II at 2.)  Greco also presented evidence that on August 12,

27   2021, she sent a text message to her attorney Hart terminating him.  (Greco Decl. II at 3;

28   id., Exh. A.)

1    In his declaration, defense counsel Low states that he was unaware that Greco

2 had purportedly discharged Hart as counsel of record on August 12, 2021, until he

3 received Greco's e-mail on August 19, 2021.  (Low Decl. at 4.)  Low further states that

4 "[a]t all times during the course of litigation, including the formation and filing of the

5 Notice and Stipulation of the Parties to Dismiss Entire Case With Prejudice, [he]

6 operated under the reasonable assumption that Ms. Greco's counsel of record was

7 authorized to act on her behalf."  (Id.)

8        D. **Relevant Testimony During the Evidentiary Hearing**

9        On February 4, 2022, the Court held an evidentiary hearing with regard to Greco's

10 Motion to Vacate.  (ECF Nos. 84, 85.)  Plaintiff Greco appeared pro se.  (ECF No. 85 at 2.)

11 Plaintiff's former counsel, Hoyt Hart, II, also appeared at the hearing.  (Id.)  Attorney

12 Jeffrey Doggett appeared on behalf of Defendants Cho, McMurray, Eisman, Shaw, Hsing,

13 Magana, Corbin, Encinitas Hospital Associates, and Coastal Pulmonary Associates.  (Id.;

14 see also id. at 5.)  Attorney William Low appeared on behalf of Defendants Rozar,

15 Himaya, and Scripps Health.  (Id.)  Attorney Michael Popcke appeared on behalf of

16 Defendants Ahern, Mason, and Encinitas Emergency Medicine, Inc.  (Id.)

17        Greco's former counsel Hart was questioned by the Court, Greco, and defense

18 counsel Low, Doggett, and Popcke.  (See ECF No. 85.)  Hart testified that Defendants e-

19 mailed over thirty authorizations for release of Greco's medical records, and he

20 forwarded the authorizations to Greco.  (Id. at 16, 27, 42–43, 64.)  Hart did not object to

21 the record requests because he "assumed" that the requested information was

22 discoverable.  (Id. at 43.)  Hart had discussions with Greco regarding the requested

23 records, whether they were privileged, and whether he should file a motion to quash or

24 modify the scope of the subpoenas seeking the records, and advised Greco that there

25 was no need to quash subpoenas seeking those records.  (Id. at 28–29, 72.)  Hart had

26 difficulties with obtaining Greco's signed authorizations because "there were materials

27 that she believed were private and not related to the issues in the case," and "she didn't

28 want to have those records released."  (Id. at 17.)

On August 12, 2021, Hart received a text message from Greco terminating him, and advised Greco that his paralegal would prepare the substitution documents within "a day or two." (Id. at 18–19, 26.)  Hart had subsequent phone conversations with Greco "about what to do and what's available, what the options [were]." (Id. at 19, 47.)  After her August 12, 2021 text message terminating his services, Greco repeatedly asked Hart to substitute in, but he did not provide the signed substitution of attorney form because he was "waiting for it to be produced by [his] paralegal." (Id. at 19, 26–27, 65.)

On August 16, 2021, Hart appeared at the Discovery Conference with this Court, but did not inform the Court or defense counsel that he "had received the termination text" from Greco. (Id. at 48; see also id. at 19.)  Hart stated that Greco was aware that he would be attending the Discovery Conference on August 16, 2021, and she did not tell him that he could not attend the conference. (Id. at 60–61.)  Hart testified that he continued to proceed as Greco's attorney of record because he believed that he had authority to do so. (Id. at 19.)

Hart further testified that after the Court adopted the version of the Stipulated Protective Order without the "Attorneys-Eyes-Only" designation and ordered Greco to sign the authorizations by the end of business day on August 17, 2021, Greco was "frustrated." (Id. at 52.)  On August 17, 2021, Hart had multiple conversations with Greco "trying to get a resolution." (Id. at 53–54.)  Hart advised Greco that a "cost waiver," which he stated was the "code in the context of med mal cases for dismissal," would stop her records from being released. (Id. at 20–21, 45, 53, 64.)  Hart believed Greco's "immediate imperative was to stop the production of confidential records," and cost waiver was the only mechanism he had to accomplish that goal. (Id. at 32.)

Hart testified that defense counsel Low advised him that his clients were not willing to offer any monetary sum to settle the case, but would agree to settle for a cost waiver. (Id.; see also id. at 61–62.)  Hart further testified as follows:

1  THE COURT:  [W]hen Mr. Low indicated that they would be willing to
2  provide a—or agree to a cost waiver and you accepted that, was that
   acceptance authorized by your client?
3  [Hart]:  It was.
4  THE COURT:  And could you discuss the terms of that conversation[?]
5  [Hart]:  This is the only way to protect those records from being
   generally released.  You know, I cannot get a protective order that's
6  attorney's eyes only.  This is our only option to protect the confidentiality
   of those records.
7  THE COURT:  And she said, "I agree.  You can dismiss the case with a
   cost waiver"?
8  [Hart]:  Yes.
9

10  (Id. at 22–23.)

11  Hart also testified that the parties entered into a "cost waiver agreement," but

12  the agreement was not in writing.  (Id. at 32–33.)  Hart further testified as follows:

13  THE COURT:  [D]o you have any doubt about whether that was an
14  actual knowledge on [Greco's] part that this case was being dismissed?  Or
   was there any type of hesitancy on her part?
15  [Hart]:  Well, yes, there's hesitancy on her part.
16  THE COURT:  As to the understanding?
   [Hart]:  [T]hese were compressed negotiations over the course of a
17  day or two, where the—my belief was that both my clients were—wanted
   the records protected, and recognized the only way to do that was the cost
18  waiver.  And, therefore, that was my mission:  Get the cost waiver.
19  THE COURT:  Okay.  And she authorized you to do that?
20  [Hart]:  That was my understanding, yes.
   . . . .
21  THE COURT:  Why did Ms.—or Dr. Greco not sign the dismissal?
22  [Hart]:  There was no place for her to sign.  It was a stipulation among
   counsel.  And, in fact, I don't think I signed it either.  I simply authorized
23  that it be signed.
24

25  (Id. at 23–24.)

26  Greco then questioned Hart as follows:

27  [Greco].  At what point did you come to me and say that we are
28  discussing dismissing the case with prejudice?

19

1        [Hart].  I don't think I ever mentioned with prejudice to you.  My

2   term was "cost waiver."

     I'm going to get you a cost waiver in order to stop the confidential

3   records being produced.  And cost waiver means the case is dismissed.

I don't think I ever used the term "with prejudice."

4   . . . .

5        [Greco].  [A]re you aware of me signing any documents?  Any

6   settlement agreements?  [A]nything where I agreed to dismiss the case

with prejudice in exchange for a cost waiver agreement?

7        [Hart].  Curiously, no.

8   . . . .

9        [Greco].  [T]here's no cost waiver agreement, and I never saw the

dismissal with prejudice or settlement agreement.  I never signed any

10  settlement agreement.  I never got to review any settlement agreement.

Correct?

11       [Hart].  Correct.  It does seem incomplete.  The only explanation I can

12  give is that we were under a little bit of time duress.

13  (Id. at 31, 33, 35.)

14      Greco further questioned Hart about the dismissal of the case:

15       [Greco].  [D]id I authorize you to enter into an agreement with

16  Scripps or anyone else about dismissing the case with prejudice?

     [Hart].  Not specifically, no.

17  . . . .

18       [Greco].  I never agreed to a dismissal with prejudice.  Correct?

     [Hart].  We never discussed with or without prejudice.  That's true.

19

20  (Id. at 63–64, 73.)

21      Hart testified that Greco understood that the case was being dismissed, otherwise

22  he would not have dismissed the case.  (Id. at 69–70.)  Greco then questioned Hart as

23  follows:

24       [Greco].  But if you—if you kept saying that the only way not to have the

25  authorizations—not to have to sign the authorizations is through a cost

waiver, and I'm not understanding that a cost waiver means dismissal with

26  prejudice, then we're not really communicating very well, are we?

     [Hart].  It's entirely possible that we didn't communicate very well.

27

28  (Id. at 70.)

1    During the evidentiary hearing, defense counsel Low quoted his August 17, 2021

2    e-mail to Hart and defense counsel, stating, in relevant part, that Plaintiffs had agreed to

3    dismiss the case with prejudice in exchange for a waiver of costs by all Defendants. (Id.

4    at 56.)  Hart testified that he did not respond to the e-mail disputing the terms of the

5    dismissal.  (Id.)  Hart further testified that he did not recall whether he forwarded the e-

6    mail to Greco and whether he provided to Greco a copy of the draft joint motion to

7    dismiss the case with prejudice, but he "communicated [to Greco] that everyone had

8    agreed," and "the case was going to be dismissed." (Id. at 57–59.)

9    Hart also testified that when Greco learned about the District Judge's order

10    dismissing the case with prejudice after Hart had e-mailed the copy of the order to

11    Greco, she was "surprised" and wanted to have the dismissal order vacated.  (Id. at 36–

12    37, 67–68.)  Hart stated that "I had—in my mind, what we were doing in negotiating

13    cost waiver was the end of the case." (Id. at 68, 75.)  Hart also testified that "having not

14    cleared specifically the issue of [dismissal of the case] with prejudice would seem to be

15    my mistake." (Id. at 77.)

16    **E.  Federal Rule of Civil Procedure 60(b)(1), (b)(6)**

17    Greco seeks to vacate the District Judge's order dismissing this action with

18    prejudice pursuant to Federal Rule of Civil Procedure 60(b)(1) and 60(b)(6).  (See ECF

19    No. 66 at 2; ECF No. 66-1 at 5–7; ECF No. 72 at 6–9.)  As discussed above, a district court

20    "may relieve a party or its legal representative from a final judgment, order, or

21    proceeding" for "mistake, inadvertence, surprise, or excusable neglect," (Fed. R. Civ. P.

22    60(b)(1)), or "any other reason that justifies relief," (Fed. R. Civ. P. 60(b)(6)).

23    The Court has carefully reviewed the evidence presented in the pleadings, as well

24    as the testimony at the evidentiary hearing.  The evidence establishes that on

25    August 12, 2021, Greco sent a text message to Hart terminating him, and Hart advised

26    Greco to wait for the substitution paperwork.  (See Greco Decl. II at 3; id., Exh. A; ECF

27    No. 85 at 18–19, 26–27, 65.)  Hart had numerous subsequent conversations with Greco

28    about the case and her options.  (Id. at 19, 47, 60–61.)  On August 16, 2021, Hart

1    appeared at the Discovery Conference with this Court, but did not notify the Court or

2    the opposing counsel about Greco's "termination" text message.  (See ECF No. 58; ECF

3    No. 85 at 19, 47–48.)  Hart subsequently signed on behalf of Plaintiffs Greco and LaRue a

4    "Joint Motion for Entry of Stipulated Protective Order," which was filed on the docket

5    on August 16, 2021.  (ECF No. 59 at 2.)  On August 17, 2021, the Court granted the joint

6    motion with modification, entered the parties' modified Stipulated Protective Order,

7    and ordered Plaintiffs to execute and deliver the previously served confidential record

8    authorizations to respective Defendants by the end of business day on August 17, 2021.

9    (ECF No. 60 at 2.)

10          After several conversations and rounds of negotiations with defense counsel on

11   August 17, 2021, Hart received an e-mail from defense counsel summarizing the terms

12   of the proposed settlement, including the term that "Plaintiffs have agreed to dismiss

13   this case with prejudice in exchange for a waiver of costs by all defendants," and Hart

14   did not dispute the terms of the settlement summarized by defense counsel.  (See Low

15   Decl., Exh. E; ECF No. 85 at 56–57.)  Hart did not discuss dismissing the case with

16   prejudice with Greco; rather, they discussed dismissing the case in exchange for a "cost

17   waiver," and Greco did not specifically authorize Hart to enter into an agreement with

18   Defendants, pursuant to which the case was to be dismissed with prejudice.  (Id. at 21–

19   23, 54, 63–64, 73.)  The negotiated "cost waiver agreement" was not in writing, and

20   Greco did not review the draft of the joint motion to dismiss the case with prejudice.

21   (Id. at 31–33, 35.)  Hart signed on behalf of Plaintiffs Greco and La Rue a "Notice and

22   Stipulation of the Parties to Dismiss the Entire Case with Prejudice," which was filed on

23   August 18, 2021.  (ECF No. 61.)

24          The Court initially needs to determine whether Hart had authority to negotiate a

25   settlement and move to dismiss the case with prejudice on Plaintiffs' behalf.  Courts in

26   this federal district have applied state law to determine whether an attorney appearing

27   in federal court was authorized to bind his client to a settlement.  See Hess v.

28   Hanneman, Case No.: 14cv2271-CAB-JMA, 2017 WL 6027015, at *5 (S.D. Cal. Dec. 4,

1    2017); <u>see also</u> <u>AT&T Mobility LLC</u>, 2015 WL 589525, at *3.  "[U]nder California law, . . .

2    an attorney has no authority, either actual or implied, to settle an action without the

3    <u>express permission</u> of his client."  <u>Harrop v. W. Airlines, Inc.</u>, 550 F.2d 1143, 1145 (9th

4    Cir. 1977) (emphasis added); <u>see also</u> <u>Hess</u>, 2017 WL 6027015, at *5 (under California

5    law, an attorney does not have implied authority to settle by virtue of his representative

6    role in pending litigation, and the client's "specific authorization" is required).

7           In light of the evidence presented, the Court concludes that Hart did not have

8    authority to negotiate a settlement pursuant to which the case was to be dismissed <u>with</u>

9    <u>prejudice</u>, and sign on Plaintiffs' behalf the joint motion to dismiss the case <u>with</u>

10   <u>prejudice</u>.  However, there is evidence in the record indicating that Greco ratified the

11   terms of the settlement.  Pursuant to the settlement agreement negotiated by Hart, the

12   case was to be dismissed with prejudice in exchange for a waiver of costs by all

13   Defendants.  (<u>See</u> Low Decl. at 2; <u>id.</u>, Exh. E.)  In light of the settlement, Defendants

14   relieved Greco of the obligation to provide signed authorizations for release of her

15   records ordered by this Court, did not seek the production of documents requested in

16   their subpoenas, and agreed to destroy any records they had obtained regarding Greco

17   and her husband.  (<u>See</u> <u>id.</u>; <u>see also</u> ECF No. 60 at 2 (this Court's order requiring Plaintiffs

18   to execute and deliver the previously served confidential record authorizations to

19   respective Defendants by the end of business day on August 17, 2021).)  After the case

20   was dismissed with prejudice, and after Greco reviewed the District Judge's order

21   granting joint motion to dismiss the case with prejudice, Greco made deliberate and

22   repeated requests for "proof" from Defendants that they "affirmatively acted to recall

23   each and every subpoena" for her records.  (<u>See</u> Low Decl. at 3; <u>id.</u>, Exhs. H, I.)  Notably,

24   Greco wrote to defense counsel that because "[t]he lawsuit has ended," Defendants

25   "ha[d] <u>no authority to continue to obtain [Greco's] or [her] husband's personal</u>

26   <u>information</u>," that Defendants' "[f]ailure to immediately quash and recall all outstanding

27   subpoenas <u>in light of the dismissal of the lawsuit [wa]s abuse of [their] subpoena</u>

28   <u>powers</u>," and demanded sworn certification that the records Defendants had received

23

1    had been deleted from their servers.  (See Low Decl. at 3; id., Exh. H (emphasis added)

2    (Greco's August 20, 2021, e-mail to defense counsel Low stating that "[t]here needs to

3    be an affirmative effort by your copy service to notify each and every recipient of a

4    served subpoena to instruct them to not respond," and that "[t]he lawsuit has ended

5    and your firm has no authority to continue to obtain my or my husband's personal

6    information.  Failure to immediately quash and recall all outstanding subpoenas in light

7    of the dismissal of the lawsuit is abuse of your subpoena powers"; also requesting

8    "sworn certification that the records you received have been completely deleted from

9    your server and from your copy service's servers" for "the entities that responded."); id.,

10   Exh. I (emphasis added) (Greco's August 23, 2021, e-mail to defense counsel Low stating

11   "I am sure there are more entities who have responded since the dismissal of the case.

12   This is a blatant abuse of your subpoena powers"; also "demand[ing] a list of ALL

13   subpoenas that were sent out and proof that you have affirmatively acted to recall each

14   and every subpoena."); see also id., Exh. K (a transcript of a voicemail defense counsel

15   Low received on August 25, 2021, from Plaintiff LaRue's former employer and a

16   recipient of a subpoena, Mr. Brown, stating that LaRue had informed him that "the

17   lawsuit was settled," and Brown wanted to confirm that the material in the subpoena

18   was no longer needed).)

19        Greco received the benefits of the settlement—the waiver of costs by

20   Defendants, and she no longer had to provide the signed authorizations for her records

21   by the deadline imposed by the Court.  Greco did not provide the signed authorizations,

22   and repeatedly e-mailed defense counsel to ensure that Defendants "affirmatively acted

23   to recall each and every subpoena" for her records "in light of the dismissal of the

24   lawsuit."  As such, the evidence in the record indicates that Greco ratified the terms of

25   the settlement agreement Hart negotiated with Defendants.  See Hess, 2017 WL

26   6027015, at *5 (finding circumstantial evidence of ratification of the agreement to

27   settle; noting that "[p]laintiff cannot receive the advantage of a settlement (a vacated

28   trial date) and escape its burden by later repudiating it.") (quoting Alvarado Cmty. Hosp.

1    v. Sup. Ct., 219 Cal. Rptr. 52, 54 (Ct. App. 1985)); Madani v. Cnty. of Santa Clara, Case

2    No. 16-CV-07026-LHK, 2019 WL 402362, at *11 (N.D. Cal. Jan. 31, 2019) ("[A] principal

3    may not both receive the advantages of an agreement and escape its burdens by later

4    repudiation" because "it would be unfair to allow [the principal] both to have [her] cake

5    and eat it too."); Goldie v. Caliber Home Loans, Inc., No. 2:16-cv-00962-KJM-DB, 2018

6    WL 4659576, at *9 (E.D. Cal. Sept. 27, 2018) (finding that plaintiff ratified her counsel's

7    authority to accept defendant's settlement offer; noting that "[plaintiff] cannot disclaim

8    his counsel's authority to enter into the settlement agreement, retain every benefit of

9    the parties' agreement, but refuse to abide by that agreement and proceed with this

10   suit."); see also Alvarado Cmty. Hosp., 219 Cal. Rptr. at 53–54 (concluding that "a client

11   cannot both accept the benefits of her lawyer's negotiated settlement and continue to

12   sue the settling defendant.  The client's acceptance of [the benefits of the settlement]

13   operates as ratification of the settlement," where the client "first sought to and in fact

14   did successfully obtain the benefits of the settlement," and afterwards moved to set

15   aside the dismissal, claiming that the attorney settled the lawsuit without

16   authorization).

17          The Court finds that Greco has not met her burden to establish that she is entitled

18   to relief under Federal Rule of Civil Procedure 60(b)(1).  See Fed. R. Civ. P. 60(b)(1);

19   Latshaw, 452 F.3d at 1101 (innocent attorney mistakes and intentional attorney

20   misconduct do not warrant relief under Federal Rule of Civil Procedure 60(b)(1)); Turner

21   v. Tierney, 678 F. App'x 580, 581 (9th Cir. 2017) (quoting Latshaw, 452 F.3d at 1101)

22   ("[A]ttorney mistakes are more appropriately addressed through malpractice claims,

23   not Rule 60(b)(1) motions.").  The Court also finds that circumstances in this case are not

24   "extraordinary" and do not warrant relief under Federal Rule of Civil Procedure 60(b)(6).

25   See id.; Fed. R. Civ. P. 60(b)(6); Latshaw, 452 F.3d at 1103 (Rule 60(b)(6) "is to be utilized

26   only where extraordinary circumstances prevented a party from taking timely action to

27   prevent or correct an erroneous judgment"); see also Lal v. Cal., 610 F.3d 518, 524 (9th

28

21cv155-RBM(MSB)

1  Cir. 2010) (citing <u>Link v. Wabash R.R. Co.</u>, 370 U.S. 626, 633–34 (1962)) ("An attorney's

2  actions are typically chargeable to his or her client and do not ordinarily constitute

3  extraordinary circumstances warranting relief from judgment under Rule 60(b)(6).").

4  Because Greco has failed to present an adequate basis for vacating the stipulated

5  dismissal of this action under Federal Rule of Civil Procedure 60(b)(1) and (b)(6), the

6  Court **RECOMMENDS** that the District Judge **DENY** the Motion to Vacate [ECF No. 66].

7        The Court also notes that in her Reply, Greco appears to ask the Court to sanction

8  "Defendants' attorneys for violating the Stipulated Protective Order by including in

9  Attorney William's Low's Declaration as Exhibit A, Plaintiff's *entire* 34-page Verified

10  Response to Scripps Defendants' Form Interrogatories."  (ECF No. 72 at 6.)  In light of

11  the procedural posture of the case, the Court **RECOMMENDS** that the District Judge

12  **DENY** Greco's request for sanctions.  (<u>See</u> ECF No. 62 (District Judge's order dismissing

13  the case with prejudice, which did not contain any language retaining jurisdiction).)  The

14  Court further **RECOMMENDS** that the District Judge direct the Clerk of Court to restrict

15  access to Exhibit A to Low's Declaration [ECF No. 69-2 at 1–36] to Court personnel and

16  case participants only.

### IV.  CONCLUSION AND RECOMMENDATION

18        For the reasons set forth above, the Court **RECOMMENDS** that Plaintiff's Motion

19  to Vacate be **DENIED**.

20        **IT IS ORDERED** that no later than **June 29, 2022**, any party to this action may file

21  written objections with the Court and serve a copy on all parties.   The document should

22  be captioned "Objections to Report and Recommendation."

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1      **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the

2  Court and served on all parties no later than <u>**July 8, 2022**</u>.   The parties are advised that

3  failure to file objections within the specified time may waive the right to raise those

4  objections on appeal of the Court's order.   <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th

5  Cir. 1998).

6      **IT IS SO ORDERED**.

7  Dated:  June 8, 2022

8

9  Honorable Michael S. Berg
   United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21cv155-RBM(MSB)